# M. MILLARD
## V.
## BOARD OF EDUCATION OF, ETC.

1.  LEASING OF SCHOOL ROOM BY BOARD.—The leasing of a school room by the board of education for temporary use for school purposes, where there is no permanent school building in the district, or where the school buildings are insufficient to accommodate all the children entitled to attend, is not within the express prohibition of the proviso to section 80 of the statute relating to schools, and this court is not disposed to extend it by construction so as to include it.

2.  RENTING PART OF CHURCH FOR SCHOOL.—The paying of rent to a church organization for the use of a room for school purposes, is not such an appropriation or aid to the church as comes within the prohibition of our constitution.

3.  RELIGIOUS EXERCISES BEFORE SCHOOL.—The facts alleged in the bill relative to the employment by the board, of teachers affiliated with the Catholic church, and the fact that teachers and pupils for one hour before school time were required to attend mass, is not passed upon by the court, inasmuch as it appears the children acted voluntarily in taking part in such exercises, and complainant has not shown wherein, as a taxpayer, he has or can be injured by such acts, and does not ask relief from such alleged acts.

ERROR to the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding. Opinion filed June 12, 1886.

The plaintiff in error filed his bill in equity in the Circuit Court of St. Clair county, in substance as follows: "The complainant respectfully shows that he is a resident and taxpayer of school district number one, town two, north, range ten west, St. Clair county, Ill.; that the school affairs of said district are under the control of the board of education, as provided by statute, instead of school directors; that this bill is filed by complainant in his own behalf and also in behalf of a large number of other taxpayers and residents of said district, who concur in the prosecution of the present suit; that for the last ten years or more the public school authorities of said district have maintained and conducted one of the schools of said district in the basement of the building known as St.

Patrick's church, which has always been and still is under the control of Roman Catholics, and devoted to the religious worship of that faith ; that such religion is sectarian ; that during the last school year said board of education appointed as teachers for such school persons only who were members of said church and believers in its faith; that said board paid to said church as rent for the use of its said basement as a school room for the school term of ten months the sum of six hundred dollars; that the children of Catholic parents and said teachers were required to assemble at said church on all school days by the hour of eight o'clock, A. M., and have mass said to them by the officiating priest of said congregation until half past eight o'clock; that said teachers and pupils were then required to repair to the school rooms in the basement of the said church and engage in further religious instruction by teaching and learning catechism until nine o'clock A. M.; that the common school exercises were then commenced and continued until twelve o'clock, when the Angelus prayer was said by pupils and teachers, this terminating the morning session of said school ; that the mass said by the priest, the catechism taught the children and the Angelus prayer said by the teachers and pupils aforesaid were all religious and sectarian exercises peculiar to the faith of said church; that the basement of the said church was never established or located as a school site by a vote of the people of the said district on a petition of the majority of the voters thereof as required by statute; that by the term of the lease under which the said basement was procured for school purposes as aforesaid, no religious or sectarian exercises of any denomination other than said church are or can be allowed; that said board of education threatens to, and will appoint only members of said church as teachers for such school for the ensuing year, and will pay said church for the use of its said basement the same rent as heretofore, and will conduct and maintain such school in said church basement at public expense with all the religious and sectarian exercises above set forth, in the same manner as during the last school year, and will persist in maintaining and supporting a public

school in such basement, in the manner above set forth, as a regular and permanent school of said district, unless restrained by this honorable court; that on the first day of February, 1885, a school site other than that mentioned in the bill was located in pursuance of a petition of a large majority of the voters of the district, and on the tenth day of March, 1885, said board of education submitted a proposal to issue $30,000 of the bonds of the said district to the voters thereof with which to pay for said site and build a school house thereon, which was voted down by a majority of eighteen, which latter proposal was opposed by the pastor in charge of the congregation aforesaid and a great number of the members thereof; that no other attempt has since been made by said board, nor was for years prior thereto, to build a school house for said district or purchase a school site."

The defendant demurred to the bill, and the demurrer being sustained, the complainant abided by his bill and it was dismissed for want of equity and he sued out this writ of error and asks that the decree may be reversed.

Mr. M. MILLARD, for plaintiff in error; that a resident taxpayer can bring a bill to prevent an illegal expenditure of public funds, cited Chase v. Stephenson, 71 Ill. 383 ; City of Springfield v. Edwards, 84 Ill. 626 ; Chestnutwood v. Hood, 68 Ill. 132 ; Wright v. Bishop, 88 Ill. 302.

As to the power of the board of education to *locate* a site : School Directors v. Miller, 54 Ill. 338 ; School Directors v. Fogleman, 76 Ill. 189 ; Thatcher v. People, 93 Ill. 240.

Mr. CHARLES W. THOMAS, for defendant in error.

PILLSBURY, P J.   The propositions relied upon by plaintiff in error for a reversal of the decree of the court below are :

1st.   Because the board has no power to rent a building of any character, from year to year, for school purposes.

2d.   Because it is not authorized to establish and maintain a school at a place or site not fixed by a vote or petition of the people of the district.

3d.  Because it has no right to subordinate a common school to the interest of any particular denomination, or assist a church in the maintenance of its organization or the propagation of its faith, or allow any religious body a benefit or privilege which is not common to all Christian sects.

In this latter respect the bill is based upon those constitutional guaranties which were intended to secure religious equality, and to prevent all connections between church and State, or, as it is sometimes expressed, between the civil and religious institutions of the country ; the idea being that neither national, state or local government authority is to be exerted in such a way as will benefit one denomination or injure another."

The first two may well be considered together.  The general assembly is required by the constitution to "provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education."
mon school education."

Obedient to the will of the people thus expressed, the legislature enacted the present school law, creating certain official agencies to carry into effect the great object of the constitution and the statute—the education of all the children of the State.  Section forty-eight of the School Act provides that directors shall establish and keep in operation, for at least one hundred and ten days of actual teaching in each year, without reduction by reason of closing schools upon legal holidays, or for any other cause, and longer if practicable, a sufficient number of free schools for the accommodation of all children in the district over the age of six and under twenty-one years, and shall secure to all such children the right and opportunity to an equal education in such free schools.  Boards of education in districts containing not less than two thousand inhabitants are, by Sec. 80 of the same act, invested with the power, and it is made their duty, in addition to, or inclusive of the powers and duties of school directors, to establish and maintain free schools not less than six nor more than ten months in each year  *  *  *  to buy or lease sites for school houses, with the necessary grounds ; *  *  *  to levy a tax annually upon the taxable property of

the district, in the manner provided by Sec. 44 of the act, for the purpose of supporting and maintaining free schools in accordance with the powers conferred by the act.    By a proviso contained in said Sec. 80 it is made unlawful for the board of education to purchase or locate a school house site ; to purchase, build or move a school house, or levy a tax to extend schools beyond the period of ten months in the year, except upon petition of a majority of the voters of the district. Here the general power is granted and the duty imposed upon the board to establish and support sufficient schools, for at least six months in the year, to accommodate all the children in the district of school age, and it must be held that the board can exercise all those incidental powers necessary to carry into effect such granted power, and to fulfill the primary object of the statute in creating the board and imposing the general duty of establishing and supporting free schools. These general or incidental powers are, of course, to be limited in the manner of their exercise, according to the provisions of the statute, so far as the legislative will has been declared in the act, but we are not to defeat the general objects or purposes of an act by attaching to any exception or proviso therein contained some element or condition not expressed therein or fairly deducible from the language employed. The power given and duty cast upon the board by the law to maintain free schools for at least six months, with a discretion upon its part to extend the term to ten months, exists by the statute and is not made dependent upon any action of the voters of the district.    It is the settled policy of our State to educate the children.    The children of to-day become the men and women of to-morrow, the stay and hope—the defenders of the republic, and the general assembly, recognizing the necessity of the education of the young as the foundation of future usefulness as citizens, has not only made the right of the child to a good common school education independent of the will or caprice of the voters of the district, or the indifference of parents, but has, by a recent statute, made it a finable offense for any person having the control and charge of any child between the ages of eight and fourteen years, to deprive such

Millard v. Board of Education of, etc.

child of the benefit of at least twelve weeks' schooling in each year. We should not attribute to the legislature the intent to make, by a proviso or exception in the statute, the principal object of the statute unattainable, unless such design is clearly manifest from the words of the statute. There is no averment in the bill that the board of education has purchased or located a school house site, or purchased, built or moved a school house, or intends so to do. It has simply leased a room wherein a common school can be kept temporarily, or until such time as the voters of the district may consent to buy a site and erect suitable school buildings for educational purposes. We can not hold that the voters, by refusing to petition for or to vote to buy and pay for a school house site, shall be permitted to nullify the beneficent provisions of our constitution and statutes, enacted for the benefit of the children. If they will not vote to erect school houses which shall belong to the district, the board will be justified in adopting some other means of performing its duty under the statute. The leasing of a school room for temporary use for school purposes, where there is no permanent school building in the district, or where they are insufficient to accommodate all the children entitled to attend school, is certainly not within the express prohibition of the proviso to Sec. 80 of the statute, and we are not disposed to extend it by construction so as to include it. To do so would allow the voters of any school district to determine whether they would have a free school in their district or not. The locating a site for a school house, which the board is not allowed to do of its own motion, means a fixed location of a site for school buildings, to be owned and controlled by the school authorities permanently, for common school purposes. It is true that the bill avers that the board will maintain the school in the basement of the church as a regular and permanent school of said district, but it is quite evident from the other allegations of the bill, that this is a mere conclusion of the pleader and therefore not admitted by the demurrer, for the bill shows that a site for a school house had been selected upon petition, and the voters refused to purchase it at an election held under the statute. It therefore appears from the bill itself that the board leases and uses this

room for a temporary school room, until such time as the electors are willing to provide a permanent site and school building for the accommodation of the scholars of the district. In this action we are not prepared to say it has exceeded its powers or duties under the statute. As to the third point, the paying of rent to a church organization for the use of a room for school purposes is not such an appropriation, or aid to the church, as comes within the prohibition of our constitution. Religious organizations are not under such legal bans that they may not deal at arm's length with the public in selling or leasing their property, when required for public use, in good faith, receiving therefor but a fair and reasonable compensation. The public in such case receives the full benefit of its contract, and the funds paid are not a gift, appropriations, or aid to the church, nor paid for any sectarian purpose. As well say, if a court house should be destroyed by fire the county authorities could not lease a church in which court could be held, and pay for it out of the county revenues. We do not propose to enter into any discussion of the relation of church to State, or suppose any case where the constitution might apply, as it is enough for the present purpose to say that, in our opinion, the room was leased for public uses, and the public received a proper equivalent for the money expended, and the indirect benefit received by the church for the use of its property is not prohibited by the law. The relief asked for only goes to the extent of restraining the board from using this room as a school room, consequently there is no object in commenting upon the facts alleged in the bill relative to the employment, by the board, of teachers affiliated with the Catholic church, nor to the facts that the teachers and scholars, for one hour before school time, were required to attend mass, or take part in or listen to any other religious exercises. So far as appears from the bill, the children acted voluntarily in taking part in such exercises, and the complainant has not shown wherein, as a taxpayer, he has or can be injured by such acts, neither does he ask relief from such alleged acts. No error appearing the decree will be affirmed.

Decree affirmed.